Paragraph 89, including any allegation that defendant Hospital and Connecticut Children's Medical Center are not separate legal entities and different employers.

<u>Financial Counselor in the Patient Account Department</u>

90.    Defendant Hospital admits that Plaintiff applied for and was not selected for the position of Financial Counselor in the Hospital's Patient Account Department in 2000. Defendant Hospital denies each and every remaining allegation made in Paragraph 90, including any allegation that Plaintiff was not selected for the position because of her race.

<u>Financial Counselor in the Patient Account Department</u>

91.    With respect to the allegations of Paragraph 91, defendant Hospital admits that Plaintiff applied and was not selected for the position of Financial Counselor in Hospital's Patient Account Department on or about November 10, 2000.  Defendant Hospital denies each and every remaining allegation of Paragraph 91, including any allegation that Plaintiff was not selected for the position because of her race.

<u>Patient Administrative Assistant in the OPD/Adult Primary Department</u>

92.    Defendant Hospital admits each and every allegation of Paragraph 92.

92a.    With respect to the allegations of subparagraph 92a, defendant Hospital denies any allegation that defendant Ciaschini intentionally referred Plaintiff to a position

26

for which she was not qualified and that Plaintiff's race or retaliation were factors in defendant Ciaschini's decision to refer Plaintiff for this position. Defendant Hospital admits each and every remaining allegation made in subparagraph 92a.

92b.    Defendant Hospital denies any allegation that Plaintiff was qualified for this position and was not interviewed for it because of her race. Defendant Hospital admits each and every remaining allegation of subparagraph 92b.

Patient Administrative Associate in the Care Continuum Unit

93.    Defendant Hospital denies any allegation in Paragraph 93 that Plaintiff was not selected for the Patient Administrative Associate position in the Care Continuum Unit because of her race. Defendant Hospital admits each and every remaining allegation of Paragraph 93.

Patient Administrative Associate in the Cardiology Center

94.    With respect to the allegations made in Paragraph 94, defendant Hospital admits that Plaintiff applied for the position of Patient Administrative Associate in the Cardiology Center on or about February 2, 2002, but denies any allegation that Plaintiff was considered for the position and not selected for it.

94a.    Defendant Hospital denies each and every allegation of subparagraph 94a.

27

94b.    Defendant Hospital denies any allegation in subparagraph 94b that Plaintiff was given a written warning under Step 3 of the Hospital's disciplinary process because of her race or for any other unlawful reason.  Defendant Hospital denies each and every allegation of subparagraph 94b.

### Patient Administrative Associate in the Nursing Unit (Bliss 10)

95.    Defendant Hospital admits the allegations of Paragraph 95 to the extent that Plaintiff claims that she applied for the position of Patient Administrative Associate in the Nursing Unit (Bliss 10).  Defendant Hospital lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 95 and leaves Plaintiff to her proof.

96.    Defendant Hospital denies each and every allegation of Paragraph 96.

97.    Defendant Hospital lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 97 and leaves Plaintiff to her proof.

98.    Defendant Hospital denies each and every allegation of Paragraph 98.

99.    With respect to the allegations of Paragraph 99, defendant Hospital admits that Plaintiff was interviewed by Lea Allard for this position.  Defendant Hospital lacks

sufficient knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 99 and leaves Plaintiff to her proof.

100.    Upon information and belief, defendant Hospital admits each and every allegation of Paragraph 100.

101.    Defendant Hospital lacks sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 101 and leaves Plaintiff to her proof.

**COUNT IV**
**FAILURE OR REFUSAL TO TRANSFER, PROMOTE OR HIRE**
**42 U.S.C. § 1981**
**AS TO ALL DEFENDANTS**

102.    Defendants Hospital, Ciaschini and O'Connell repeat and re-allege the answers to Paragraphs 1 through 101 and to Paragraphs 104 through 182 as if they were fully set forth herein.

103.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 103.

**COUNT V**
**RETALIATION**
**42 U.S.C. §2000e-3(a)**
**AS TO ALL DEFENDANTS**

104.    Defendants Hospital, Ciaschini and O'Connell repeat and re-allege the

answers to Paragraphs 1 through 103 and to Paragraphs 125 through 175 as if they were

fully set forth herein.

105.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation

of Paragraph 105.

106.    Defendants Hospital, Ciaschini and O'Connell admit that plaintiff sent letters

to defendant Ciaschini that were dated January 23, 2001 and February 9, 2001.  To the

extent the allegations in Paragraph 106 and subparagraphs 106a through 106f are based on

letters dated January 23, 2001 and February 9, 2001, the content of those letters speak for

itself; but to the extent that Paragraph 106 and subparagraphs 106a through 106f require an

response, defendants Hospital, Ciaschini and O'Connell deny each and every allegation

made in Paragraph 106 and subparagraphs 106a through 106f.

**Suspension**

107.    With respect to the allegations of Paragraph 107, defendants Hospital, Ciaschini and O'Connell deny that defendant O'Connell suspended Plaintiff without pay on Friday, February 9, 2001, under Step 4 of the defendant Hospital's discipline process before issuing Plaintiff a Final Written Warning under Step 3 of defendant Hospital's discipline process.  Defendants Hospital, Ciaschini and O'Connell also deny any allegation in Paragraph 107 that the defendant Hospital has not retained the right to exercise discretion in the application of its discipline process, including the right to skip steps in the disciplinary process.  Defendants Hospital, Ciaschini and O'Connell admit Plaintiff was suspended on Friday, February 9, 2001.

108.    Defendants Hospital, Ciaschini and O'Connell admit that Plaintiff was issued a written warning on February 13, 2001, because her behavior failed to meet the Hospital's Code of Conduct and the Relationship Competency required by its Performance Management Competencies.  To the extent the remaining allegations of Paragraph 108 are based on the content of the written warning issued on February 13, 2001, the content of the document speaks for itself.  Defendants Hospital, Ciaschini and O'Connell deny each and

every remaining allegation of Paragraph 108, including any allegation that this written warning was issued improperly or in order to retaliate against Plaintiff.

109.    Defendants Hospital, Ciaschini and O'Connell admit the allegations of Paragraph 109 to the extent they allege that Plaintiff "was not in a management position at Hartford Hospital." Defendants Hospital, Ciaschini and O'Connell also admit that Plaintiff as a Hospital employee was entitled to be a "beneficiary" of the defendant Hospital's Performance Management Competencies. Defendants Hospital, Ciaschini and O'Connell deny each and every remaining allegation of Paragraph 109, including the allegations that the defendant Hospital's Performance Management Competencies are applicable only to its managerial employees and Plaintiff was not afforded the benefit of these Performance Management Competencies as an employee of defendant Hospital.

110.    Defendants Hospital, Ciaschini and O'Connell admit the allegations of Paragraph 110 to the extent they assert that Plaintiff's position in the Conklin Building would be eliminated thirty-four (34) workdays after the issuance of the written warning dated February 13, 2001. To the extent that the remaining allegations of Paragraph 110 are based on the written warning dated February 13, 2001, the content of that document speaks

32

for itself; but, defendants Hospital, Ciaschini and O'Connell deny each and every remaining allegation of Paragraph 110.

111.    With respect to the allegations of Paragraph 111, defendants Hospital, Ciaschini and O'Connell admit that "[o]n February 13, 2001, defendants O'Connell and Ciaschini informed Plaintiff that her failure to fulfill the Relationship Competency required by defendant Hospital's Management Competencies would result in her advancing to the next level of the Employee Performance Improvement Process," which was suspension or termination at Step 4.  Defendants Hospital, Ciaschini and O'Connell also admit that Plaintiff was suspended on February 9, 2001, but they deny that this suspension was imposed under Step 4 of the defendant Hospital's Employee Performance Improvement Process.  Defendants Hospital, Ciaschini and O'Connell deny each and every remaining allegation of Paragraph 111, including the allegation that the defendant Hospital's Employee Performance Improvement Process was improperly applied to Plaintiff.

112.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 112.

113.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 113.

114.    Defendants Hospital, Ciaschini and O'Connell deny any allegation in Paragraph 114 that the Hospital's Performance Management Competencies are not applicable to all Hospital employees, including Plaintiff in her former position in the Conklin Building.   To the extent the allegations of Paragraph 114 are based on the defendant Hospital's Code of Conduct, the content of that document speaks for itself; but defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 114.

115.    To the extent that the allegations of Paragraph 115 and subparagraphs 115a through 115g are based on the written warning issued to Plaintiff on February 13, 2001, the content of that document speaks for itself; but defendants Hospital, Ciaschini and O'Connell deny each and every remaining allegation of Paragraph 115 and subparagraphs 115a through 115g, including any allegation that Plaintiff's conduct did not violate the Hospital's Code of Conduct and that Plaintiff was improperly issued a written warning based on her conduct.

116.    Defendants Hospital, Ciaschini and O'Connell admit each and every allegation of Paragraph 116.

117.    Defendants Hospital, Ciaschini and O'Connell lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 117 and leave

34

Plaintiff to her proof.  Defendants Hospital, Ciaschini and O'Connell deny any allegation in Paragraph 117 that Plaintiff was not required comply with the Relationship Competency under the Hospital's Performance Management Competencies whenever she encountered the "employees or other individuals who would sit in Ms. Lynch's office."

**Paychecks**

118.    Defendants Hospital, Ciaschini and O'Connell lack sufficient knowledge or information to form a belief as to the truth of the allegation in Paragraph 118 that Plaintiff "received an unsealed pay envelope" on January 21, 2001 and leave Plaintiff to her proof. Defendants Hospital, Ciaschini and O'Connell deny each and every remaining allegation of Paragraph 118, including any allegation that defendants Ciaschini and O'Connell caused Plaintiff to "receive an unsealed pay envelope."

119.    Defendants Hospital, Ciaschini and O'Connell lack sufficient knowledge or information to form a belief as to the truth of the allegations of Paragraph 119 and leave Plaintiff to her proof.

120.    Defendants Hospital, Ciaschini and O'Connell admit that Plaintiff did not receive a paycheck on March 1, 2001; but they deny any allegation that this paycheck was

never issued to Plaintiff and that defendants Ciaschini and O'Connell played a role in Plaintiff's failure to receive a paycheck on March 1, 2001.

121.     To the extent that the allegations of Paragraph 121 are based on an alleged conversation between Plaintiff and the defendant Hospital's Payroll Department, defendants Hospital, Ciaschini and O'Connell lack sufficient knowledge or information to form a belief as to the truth of these allegations and leave Plaintiff to her proof.  Defendants Hospital, Ciaschini and O'Connell deny the allegation that defendant O'Connell personally "submitted these time cards" to the Payroll Department and that Plaintiff's time card was the only time card that was not submitted for this pay period.  Defendants Hospital, Ciaschini and O'Connell also deny any allegation that defendant O'Connell intentionally failed to submit Plaintiff's time card for to the Payroll Department for this pay period.

122.     Upon information and belief, defendants Hospital, Ciaschini and O'Connell admit each and every allegation of Paragraph 122.

**Discrimination Complaint**

123.     Defendants Hospital, Ciaschini and O'Connell admit that plaintiff wrote a letter to defendant Ciaschini dated February 12, 2001, the content of which speaks for itself.

Defendants Hospital, Ciaschini and O'Connell deny each and every remaining allegations in Paragraph 123.

## COUNT VI
### RETALIATION
### 42 U.S.C. §1981
### AS TO ALL DEFENDANTS

124.    Defendants Hospital, Ciaschini and O'Connell repeat and re-allege the answers to Paragraphs 1 through 123 and to Paragraphs 126 through 182 as if they were fully set forth herein.

125.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 125.

## COUNT VII
### DISPARATE IMPACT OF UNLAWFUL EMPLOYMENT PRACTICE
### 42 U.S.C. §§2000e-2(a), 2000e-2(k)
### AS TO DEFENDANT HOSPITAL

126.    Defendants Hospital repeats and re-alleges the answers to Paragraphs 1 through 125 and to Paragraphs 134 through 182 as if they were fully set forth herein.

127.    Defendant Hospital denies each and every allegation of Paragraph 127.

128.    To the extent that the allegations of Paragraph 128 are based on the written warning issued to Plaintiff on February 13, 2001, the content of that document speaks for

37

itself. Defendant Hospital denies the allegation in Paragraph 128 that Plaintiff was suspended under Step 4 of the defendant Hospital's discipline process for not communicating with Jan Lynch, Robert Lindyer, Susan Wright, Sandy Beggs, John Unikewicz and Susan O'Connell. Defendant Hospital also denies that Plaintiff was issued a written warning based solely on her failure to communicate with these individuals. Upon information and belief, defendant Hospital admits that all these individuals are white.

129.    Defendant Hospital admits the allegation in Paragraph 129 that there was a meeting with Plaintiff a Kelvin Griffith, a patient transport aide, in defendant O'Connell's office on August 5, 1999, to discuss coverage at the entrance to the Conklin Building. Defendant Hospital lacks sufficient knowledge or information to form a belief as to the truth of the allegations that Plaintiff became frustrated with Kelvin Griffith during the August 5th meeting because of his alleged unreliability in performing his job and leave Plaintiff to her proof with respect to these allegations. Defendant Hospital denies each and every remaining allegation of Paragraph 129.

130.    Upon information and belief, defendant Hospital admits that Mr. Griffith is black and he was later discharged from Hospital employment.

38

131.    Defendant Hospital denies each and every allegation of Paragraph 131, including the allegation that Plaintiff indicated in defendant O'Connell's presence during the August 5th meeting that "she [Plaintiff] would not engage in non-job related speech with Mr. Griffith."

132.    Defendant Hospital denies each and every allegation of Paragraph 132.

133.    Defendant Hospital denies each and every allegation of Paragraph 133, including the allegation that defendant Hospital had any such policy.

134.    Defendant Hospital denies each and every allegation of Paragraph 134, including the allegation that defendant Hospital had any such policy.

**COUNT VIII**
**DISPARATE IMPACT OF UNLAWFUL EMPLOYMENT PRACTICE**
**42 U.S.C. §§ 2000e-2(a), 20003-2(k)**
**AS TO DEFENDANT HOSPITAL**

135.    Defendant Hospital repeats and re-alleges the answers to Paragraphs 1 through 134 and to Paragraphs 143 through 182 as if they were fully set forth herein.

136.    Defendant Hospital admits that, based upon job duties and department, certain administrative positions within the Hospital either require or maintain a preference for candidates who are bi-lingual in Spanish and English in connection with applications for such positions.  The Hospital denies each and every remaining in Paragraph 136.

137.    Defendant Hospital admits that, based upon job duties and department, certain administrative positions within the Hospital either require or maintain a preference for candidates who are bi-lingual in Spanish and English in connection with applications for transfer, promotion or hire for such positions.  The Hospital denies each and every remaining allegation in Paragraph 137.

138.    Defendant Hospital admits that its preference and/or requirement for candidates who are bi-lingual in Spanish and English for certain positions within the Hospital is not based on a formal written Hospital policy, other than its Equal Employment Opportunity policies.  The Hospital denies each and every remaining allegation in Paragraph 138.

139.    Defendant Hospital admits that other than its Equal Employment Opportunity policies, it does not have a formalized written policy for determining whether a new or vacant position requires that an applicant for the position possess Spanish and English lingual skills.  The Hospital denies each and every remaining allegation in Paragraph 139.

140.    Defendant Hospital admits that other than its Equal Employment Opportunity policies, it does not have a formalized written policy to demonstrate or support the business

necessity of requiring or preferring Spanish and English skills for certain positions.

Defendant Hospital denies the remainder of Paragraph 140.

    141.    Defendant Hospital denies each and every allegation in Paragraph 141.

    142.    Defendant Hospital denies each and every allegation in Paragraph 142.

**COUNT IX**
**DEPRIVATION OF EMPLOYMENT OPPORTUNITIES AND ADVERSE EFFECT**
**ON EMPLOYMENT STATUS**
**42 U.S.C. §2000e-2(a)(2)**
**AS TO DEFENDANT HOSPITAL**

    143.    Defendant Hospital repeats and re-alleges the answers to Paragraphs 1

through 142 and to Paragraphs 147 through 182 as if they were fully set forth herein.

    144.    Defendant Hospital denies each and every allegation of Paragraph 144.

**COUNT X**
**DEPRIVATION OF EMPLOYMENT OPPORTUNITIES AND ADVERSE EFFECT**
**OF EMPLOYMENT STATUS**
**42 U.S.C. §1981**
**AS TO ALL DEFENDANTS**

    145.    Defendants Hospital, Ciaschini and O'Connell repeat and re-allege the

answers to Paragraphs 1 through 144 and to Paragraphs 147 through 182 as if they were

fully set forth herein.

41

146.   Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 146.

## COUNT XI
### IMPOSITION OF NON-JOB RELATED EMPLOYMENT STANDARD
### 42 U.S.C. §2000e-2(a)(2)
### AS TO DEFENDANT HOSPITAL

147.   Defendant Hospital repeats and re-alleges the answers to Paragraphs 1 through 146 and to Paragraphs 152 through 182 as if they were fully set forth herein.

148.   Defendant Hospital denies each and every allegation of Paragraph 148.

149.   Defendants Hospital denies each and every allegation of Paragraph 149.

150.   Defendant Hospital denies each and every allegation of Paragraph 150.

151.   Defendant Hospital denies each and every allegation of Paragraph 151, including the allegation that it had such a racially motivated expectation.

## COUNT XII
### IMPOSITION OF NON-JOB RELATED EMPLOYMENT STANDARD
### 42 U.S.C. §1981
### AS TO ALL DEFENDANTS

152.   Defendants Hospital, Ciaschini and O'Connell repeat and re-allege the answers to Paragraphs 1 through 151 and to Paragraphs 147 through 182 as if they were fully set forth herein.

153.   Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 153.

## COUNT XIII
### CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT
### CONN. GEN. STAT. §46a-60(a)(1)
### AS TO DEFENDANT HOSPITAL

154.   Defendant Hospital repeats and re-alleges the answers to Paragraphs 1 through 153 and to Paragraphs 156 through 182 as if they were fully set forth herein.

155.   Defendant Hospital denies each and every allegation of Paragraph 155.

## COUNT XIV
### CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT
### CONN. GEN. STAT. §46a-60(a)(4)
### AS TO DEFENDANT HOSPITAL

156.   Defendant Hospital repeats and re-alleges the answers to Paragraphs 1 through 155 and to Paragraphs 158 through 182 as if they were fully set forth herein.

157.   Defendant Hospital denies each and every allegation of Paragraph 157.

## COUNT XV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

158.   Defendants Hospital, Ciaschini and O'Connell repeat and re-allege the answers to Paragraphs 1 through 157 and to Paragraphs 163 through 182 as if they were fully set forth herein.

159.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 159, including the allegation that they engaged in "unlawful, discriminatory acts" toward Plaintiff.

160.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 160, including the allegation that they engaged in "unlawful, discriminatory acts" toward Plaintiff.

161.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 161, including the allegation that they violated "Plaintiff's rights under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, and the Connecticut Fair Employment Practices [Act], and other state laws."

162.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation made in Paragraph 162, including any allegation that they caused any "distress to Plaintiff" by violating Plaintiff's rights under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Connecticut Fair Employment Practices Act, and other state laws or by engaging in any extreme and outrageous conduct toward her.

**COUNT XVI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

163.    Defendants Hospital, Ciaschini and O'Connell repeat and re-allege the answers to Paragraphs 1 through 162 and to Paragraphs 165 through 182 as if they were fully set forth herein.

164.    Defendants Hospital, Ciaschini and O'Connell deny each and every allegation of Paragraph 164, including the allegation that they engaged in "unlawful discriminatory conduct" toward Plaintiff.

## COUNT XVII
### BREACH OF IMPLIED CONTRACT OF EMPLOYMENT
### AS TO DEFENDANT HOSPITAL

165.    Defendant Hospital repeats and re-alleges the answers to Paragraphs 1 through 164 and to Paragraphs 174 through 182 as if they were fully set forth herein.

166.    Defendant Hospital denies each and every allegation of Paragraph 166, including the allegation that there was an "an implied contract" between it and Plaintiff "that specified a four-step discipline policy."

167.    Defendant Hospital denies each and every allegation of Paragraph 167.

168.    Defendant Hospital denies each and every allegation of Paragraph 168.

169.    Defendant Hospital denies each and every allegation of Paragraph 169.

170.    Defendant Hospital admits that Plaintiff was suspended prior to the issuance of a Final Written Warning, but defendant Hospital denies that any allegation that this suspension was imposed under Step 4 of its Employee Performance Improvement Process. Defendant Hospital also denies each and every remaining allegation of Paragraph 170.

171.    Defendant Hospital admits the allegation in Paragraph 171 that Plaintiff was issued a Final Written Warning under its Employee Performance Improvement Process after she was suspended, but it denies any allegation that this previous suspension was imposed under its Employee Performance Improvement Process or was improperly imposed on Plaintiff under its human resource policies and practices.  To the extent that the remaining allegations of Paragraph 171 are based on the Hospital's Employee Performance Improvement Process, the content of that document speaks for itself; but defendant Hospital denies these remaining allegations, including any assertion that Plaintiff had been improperly suspended under Step 4 of the Employee Performance Improvement Process prior to the issuance of a Final Written Warning.

172.    Defendant Hospital denies each and every allegation made in Paragraph 172, including any allegation that it breached its discipline policy.

46

173.    Defendant Hospital lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 173 pertaining to the reason why Plaintiff "transferred to the Administrative Associate I position at the Conklin Building entrance" and leaves Plaintiff to her proof with respect to these allegations.  Defendant denies each and every remaining allegation in Paragraph 173, including any allegation that it breached its discipline policy and did not implement it consistently and impartially with respect to Plaintiff.

174.    Defendant Hospital denies each and every allegation made in Paragraph 174, including the allegation that it failed "to apply its discipline policy consistently and impartially" with respect to Plaintiff.

## COUNT XVIII
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO DEFENDANT HOSPITAL

175.    Defendant Hospital repeats and re-alleges the answers to Paragraphs 1 through 174 and to Paragraphs 177 through 182 as if they were fully set forth herein.

176.    Defendant Hospital denies each and every allegation in Paragraph 176, including the allegations that it was required to "implement a four-step discipline policy"

and it "failed or refused to implement a four-step discipline policy consistently and impartially."

## COUNT XIX
### TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE AS TO ALL DEFENDANTS

177.    Defendants Ciaschini, O'Connell and Niles repeat and re-allege the answers to Paragraphs 1 through 176 as they were fully set forth herein.

178.    Defendants Ciaschini, O'Connell and Niles deny each and every allegation made in Paragraph 178, including the allegation that Plaintiff has "contractual rights" under the Civil Rights Act of 1866, 42 U.S.C. §1981 and the laws of the State of Connecticut.

179.    With respect to the allegations made in Paragraph 179, defendants Ciaschini, O'Connell and Niles admit that Plaintiff was an employee of defendant Hospital until March 31, 2001.  Defendants Ciaschini, O'Connell and Niles lack sufficient knowledge or information to form a belief as to the truth of the allegation that such a relationship exists between Plaintiff and defendant Hospital "at all times relevant hereto" and leave Plaintiff to her proof.

180.    With respect to the allegations made in Paragraph 180, defendants Ciaschini, O'Connell and Niles admit that they knew that Plaintiff was an employee of defendant

48

Hospital.  Defendants Ciaschini, O'Connell and Niles deny each and every remaining allegation of Paragraph 180, including the allegation that they "act[ed] outside the scope of their employment with Hartford Hospital."

181.    Defendants Ciaschini, O'Connell and Niles deny each and every allegation of Paragraph 181, including the allegation that they "act[ed] outside the scope of their employment with Hartford Hospital."

182.    Defendants Ciaschini, O'Connell and Niles deny each and every allegation of Paragraph 182, including the allegation that they "act[ed] outside the scope of their employment with Hartford Hospital."

## **PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to the relief enumerated and requested in the Complaint or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE -- COUNTS I, III, V, VII, VIII, IX and XI

To the extent that plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* are based upon her applications for promotion and/or transfer made prior to May 24, 2000, they are barred by the applicable 300-day statute of limitations.

### SECOND AFFIRMATIVE DEFENSE -- COUNTS I, III, V, VII, VIII, IX and XI

To the extent that plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* are based upon the July 30, 1999 Memorandum from Defendant O'Connell, they are barred by the applicable 300-day statute of limitations.

### THIRD AFFIRMATIVE DEFENSE -- COUNTS XII and XIV

To the extent that plaintiff's claims under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60 *et seq.* are based upon her applications for promotion and/or transfer made prior to September 21, 2000, they are barred by the applicable 180-day statute of limitations.

### FOURTH AFFIRMATIVE DEFENSE -- COUNTS XII and XIV

To the extent that plaintiff's claims under the Connecticut Fair Employment

Practices Act, Conn. Gen. Stat. 46a-60 *et seq*. are based upon the July 30, 1999

Memorandum from Defendant O'Connell, they are barred by the applicable 180-day statute

of limitations.

### FIFTH AFFIRMATIVE DEFENSE -- COUNT VIII

To the extent that the Defendant Hospital maintained an employment practice that

required Spanish and English language skills as a qualification for certain positions, such

practice was based on a legitimate business necessity.

### SIXTH AFFIRMATIVE DEFENSE -- COUNTS I and XIII

At all times relevant to the events alleged in the Amended Complaint, defendant

Hospital maintained a policy forbidding harassment based on any protected classification,

including race.  The Hospital posted and/or otherwise distributed this policy.  The Hospital

exercised reasonable care to prevent and to promptly correct any harassing behavior.

Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities

provided by the Hospital or to avoid harm otherwise.

### SEVENTH AFFIRMATIVE DEFENSE -- COUNTS I THROUGH XIV AND XVII

Plaintiff has failed to mitigate her damages.

## EIGHTH AFFIRMATIVE DEFENSE -- COUNTS XV, XVI AND XVIII

Plaintiff fails to state a claim upon which relief can be granted.

WHEREFORE, defendants pray that the Court dismiss the Complaint and award defendants such relief as the Court deems just and proper, including attorney's fees and costs.

DEFENDANTS,
HARTFORD HOSPITAL, GLADYS
CIASCHINI, SUSAN O'CONNELL,
AND SANDRA NILES

By

Brenda A. Eckert
Federal Bar No. ct00021
beckert@goodwin.com
Gregg P. Goumas
Federal Bar No. 19095
ggoumas@goodwin.com
Shipman & Goodwin LLP
One American Row
Hartford, CT  06103-2819
(860) 251-5000 (tel.)
(860) 251-5599 (fax)

366616 v.01 S2

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Amended Answer was mailed, via U.S.

mail, postage prepaid, on this 5th day of April, 2004, to:

Rachel M. Baird, Esq.
Law Office of Rachel M. Baird
379 Prospect Street
Torrington CT  06790-5239

Gregg R. Goumas

366616 v.01 S2

54