requirement that applicants for certain positions be bi-lingual can be considered an "employment practice" for purposes of the disparate impact analysis, and assuming Title VII even recognizes such a disparate impact claim, Solomon has no statistical or other evidence that this practice had a disparate impact on black applicants. Defendants are entitled to summary judgment on Count Eight.

    F.    **Solomon's Claim for Intentional Infliction of Emotional Distress Fails As a Matter of Law Because Defendants' Conduct Was Not Extreme and Outrageous.**[31]

Solomon cannot prevail on her claim for intentional infliction of emotional distress in Count Fifteen because none of the defendants' alleged conduct was extreme or outrageous. To establish a intentional infliction of emotional distress claim under Connecticut law, a plaintiff must demonstrate four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Carrol v. Allstate Ins. Co., 262 Conn. 433, 442-43 (2003)(citing Appleton v. Bd. of Education of Town of Stonington, 254 Conn. 205, 210 (2000) "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id. (citing Bell v. Bd. of Education, 55 Conn. App. 400, 410 (1999). "Liability for intentional infliction of

---

[30] See App. B, Tab M.
[31] If the Court grants summary judgment on all of Solomon's federal statutory causes of action, the defendants respectfully request that the Court decline to exercise jurisdiction over her state common law claims pursuant to 28 U.S.C. §1367.

emotional distress requires conduct that exceeds all bounds usually tolerated by decent society ..." Carrol, 262 Conn. at 443 (quoting Petyan v. Ellis, 200 Conn. 243, 254 n.5 (1986) (internal quotation mark omitted). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Id. at 443; see also Dollard v. Bd. of Educ., 63 Conn. App. 550, 552-53 (Conn. App. Ct. 2001) (concerted scheme to force teacher to resign and or to become so distraught they could terminate her employment was insufficient to make out an intentional infliction claim). "Only where reasonable minds disagree does it become an issue for the jury." Appleton, 254 Conn. at 210.

Solomon maintains that the following conduct by O'Connell was extreme and outrageous: (1) she suspended Solomon without pay; (2) she was allegedly working behind the scenes to keep Solomon from transferring; (3) she (O'Connell) allegedly helped her spouse get a job at the Hospital; and (4) O'Connell allegedly helped her daughter get admitted to a radiation program in the Hospital's school of Allied Health. Def. 56(a)1 ¶195. Initially, it should be noted that Solomon has no admissible evidence to substantiate claims two through four.[32] With respect to her suspension, it does not amount to extreme and outrageous conduct. See Harhay v. Blanchette, 160 F. Supp. 2d 306, 315 (D. Conn. 2001)

---

[32] When asked at her deposition what evidence she had that O'Connell was impeding her ability to transfer, Solomon testified: "Well first of all, Alex Moreau told me that Virginia Hernandez Green told him that the reason why I was having a problem transferring was because Susan O'Connell was impeding my progress. He also made the statement that all Susan had to do was pick-up the telephone and people listened. What else do I have? It could be inferred that something was going on behind the scenes because other people who were similarly situated to me ... were able to transfer...." Solomon Dep. at 212-13, App. B, Tab A. Thus, Solomon relies solely on vague double hearsay statements and her speculation.

61

(termination of employee, even when accompanied by other aggravating factors, does not itself give rise to a claim for intentional infliction of emotional distress); Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. 81, 92 (D. Conn. 1998) (verbal warnings, suspension, and termination may have resulted in hurt feelings, but were insufficient to support claim of intentional infliction of emotional distress).

With respect to Niles, Solomon alleges that the "racial slurs" she made during Solomon's employment, as documented Solomon's February 9, 2001 letter to Ciaschini, were extreme and outrageous. Def. 56(a)1 ¶197. As discussed above with respect to Solomon's hostile environment claim, none of the alleged comments were overtly racist. At most, Niles' comments reflect a lack of sensitivity. Connecticut Courts have held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings, do not support a claim for intentional infliction of emotional distress." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000); see also Perodeau v. City of Hartford, 259 Conn. 729, 757 (2002)(individuals in the workplace should expect to be subject to workplace gossip, rivalry, personality conflicts and the like).

Solomon claims that Ciaschini engaged in extreme and outrageous conduct when she: (1) supported O'Connell's suspension of Solomon, which resulted in, among other things, her being unable to transfer; (2) referred Solomon to a position that she was not qualified for because Solomon was not bi-lingual. Def. 56(a)1 ¶196. Solomon also identifies the following additional conduct, much of which is not attributed specifically to any of the individual defendants: (1) the elimination of her temporary position effective March 31,

2001; (2) alleged gossip and attempts to humiliate her due to her failure to obtain an internal transfer; (3) not receiving a paycheck on March 1, 2001; (4) her inability to transfer due to her suspension; (5) her inability to find comparable work following the termination of her employment; (6) her lack of knowledge about the type of references the Hospital was providing to prospective employers; and (7) her inability to meet her financial obligations after her termination. Id. ¶198. None of these alleged acts by any of the defendants was sufficiently extreme and outrageous to give rise to an individual infliction claim. Count Fifteen should be dismissed as to all defendants.

### G. Solomon Also Cannot Prevail on Her Claim for Negligent Infliction of Emotional Distress.

Solomon's claim for negligent infliction of emotional distress in Count Sixteen should also be dismissed because it is legally insufficient. In order to establish a cause of action for negligent infliction of emotional distress, a plaintiff must prove that the defendant should have: (1) realized that its conduct involved an unreasonable risk of causing distress to the plaintiff; and (2) realized that the distress, if caused, might result in illness or bodily injury. See Barrett v. Danbury Hospital, 232 Conn. 242, 260-61 (1995). Further, in the employment context, only conduct occurring during the termination process may give rise to a valid infliction of emotional distress claim. Perodeau, 259 Conn. at 762-63.

Plaintiff's claim for negligent infliction of emotional distress should be dismissed because Solomon has no evidence that defendants knew or should have known that their conduct would cause her emotional distress. When asked at her deposition what evidence she had that O'Connell knew or should have had such knowledge, she testified that "the

63

American work ethic is about having a job, making a living and taking care of yourself," and that "when you put an employee in a situation where they can't do that, then she should know that that would cause emotional distress." Solomon Dep. at 276, 277 (same as to Ciaschini), and 278 (same as to Niles), App. B, Tab A. Under Solomon's theory, any time an employer terminates an employee it would give rise to a claim for negligent infliction of emotional distress. However, it is well settled that "[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Parsons v. United Technology Corp., 243 Conn. 66, 88-89 (1997).

In addition, Solomon has not identified any unreasonable conduct by the defendants during the termination process. Most of the conduct alleged by Solomon, such as Niles' comments, her February 9, 2001 suspension, and February 13, 2001 written warning, all took place during her continuing Hospital employment. Thus, her claim for negligent infliction of emotional distress should be dismissed as to all defendants.

### H.  Solomon Did Not Have An Implied Contract of Employment with the Hospital.

In Count Seventeen, Solomon alleges that the Hospital violated an implied contract of employment as contained in its "four-step discipline policy" when she was suspended without pay prior to being issued a prior written warning. Compl. ¶166.

In order to prevail on her claim, Solomon must demonstrate an actual agreement by the Hospital to have an employment contract with her. "A contract implied in fact, like an express contract, depends on actual agreement." Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 111-12 (1988) (internal citations and quotations omitted). The Connecticut

Supreme Court has observed, that to prevail on a wrongful termination claim, "which alleged the existence of an implied agreement between the parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that [the defendant] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause [following progressive disciplinary measures]." Id. at 112 (Internal quotation marks omitted.). "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." Christensen v. Bic Corp., 18 Conn. App. 451, 458 (1989). "The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract." Id. (internal citations and quotation marks omitted).

Solomon cannot prevail on this claim for several reasons. First, she admitted at her deposition that she was an employee at-will. Def. 56(a)1 ¶12. Second, despite her allegation that she "would not have transferred to the Administrative Associate I position at the Conklin Building entrance ... but for the Hospital's representation in its policy that its discipline policy would be implemented consistently and impartially," it is undisputed that that she was not even aware of the policy at that time. Id. ¶16. Thus, there was no meeting of the minds sufficient to create an implied contract. See Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725, 732 (1996) (rejecting plaintiff's claim of implied contract based on

65

progressive disciplinary policy).[33] Her breach of implied contract claim should be dismissed as to all defendants.

### I. Solomon's Claim for Breach of the Covenant of Good Faith and Fair Dealing Must Be Dismissed Because She Has Other Statutory Remedies Available to Her.

Solomon alleges in Count Eighteen that the Hospital "breached an implied covenant of good faith and fair dealing when it failed or refused to implement a four-step discipline policy consistently and impartially." Compl. ¶176. Connecticut Courts have recognized that "every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231, 238 (1992). To establish a claim for breach of an implied covenant of good faith and fair dealing where the employment is terminable at will, a plaintiff must establish that her dismissal was for a demonstrably improper reason, the impropriety of which is derived from a violation of some important public policy. Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 550 n.4 (D. Conn.), aff'd, 104 F.3d 355 (2d Cir. 1996); Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 565 (1984). A cause of action in tort for breach of the covenant of good faith and fair dealing exists only when a discharge violates public policy and the employee is *otherwise without a remedy*. See Venterina v. Cummings & Lockwood, 117 F. Supp. 2d 114, 119 (D. Conn. 1999); Brightly v. Abbott Terrace Health Center, Inc., 2001 WL 1681976 at *1, No. CV98-0148584 (Conn.

---

[33] Furthermore, when questioned at her deposition about her implied contract claim, Solomon testified: "I don't know what contract you are talking about; because like I said, *I never thought of my employment in terms of being – having a contract with Hartford Hospital while I was working there.*" Solomon Dep. at 296, App. B, Tab A.

66

Super. 2001)[34]. As discussed above with respect to Solomon's implied contract claim, she admits that she was an at-will employee. Since she has pled multiple violations of Title VII, §1981 and CFEPA, she clearly has statutory remedies available to her. Thus, she cannot avail herself of the covenant of good faith and fair dealing and Count Eighteen should be dismissed as to all defendants.

> **J.   Solomon Cannot Prevail on Her Claim for Tortious Interference Because There Is No Evidence That the Defendants Were Acting Outside the Scope of Their Employment or Maliciously Attempted to Interfere with Solomon's Employment Relationship with the Hospital.**

In Count Nineteen, Solomon alleges that the individual defendants acted outside the scope of their employment and intentionally sought to interfere with her employment relationship with the Hospital. Connecticut Courts have "long recognized a cause of action for tortious interference with contractual rights or other business relations...." Solomon v. Aberman, 196 Conn. 359, 364 (1985). "The essential elements of such a claim include, of course, the existence of a contractual or other beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss." Id. "For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation, or molestation ... or that the defendant acted maliciously." Blake v. Levy, 191 Conn. 257, 261 (1983). The cause of action, however, has limits:

> An agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal

---

[34] See App. B, Tab N.

67

and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract... An agent, however, can be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power for personal gain.

Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 60-61 (1984); Bowman v. Grolsch Bierbrouweij B.V., 474 F. Supp. 725, 733 (D. Conn. 1979).

Solomon has no evidence that any of the individual defendants acted outside the scope of their employment to interfere with her employment relationship. With respect to O'Connell, Solomon claims that she acted outside the scope of her employment by: (1) interfering with her attempts to transfer; (2) suspending her without pay; and (3) issuing her a written warning. Def. 56(a)¶¶206. First, regarding her allegation that O'Connell intentionally interfered with her attempts to transfer, as discussed above, Solomon has no admissible evidence to substantiate this claim. Solomon has no evidence that any of the hiring managers had any contact with O'Connell about Solomon's application. Furthermore, when O'Connell suspended Solomon and issued her a written warning, O'Connell clearly did so within the scope of her employment as Solomon's immediate supervisor.

With respect to Ciaschini, Solomon alleges that she acted outside the scope of her employment by: (1) telling O'Connell that Solomon's transfer application for another position had been rejected; (2) by supporting the written warning and suspension imposed by O'Connell; and (3) by referring Solomon to positions for which she was not qualified. Id. ¶203. As a Human Resources Consultant, Ciashini was not acting outside the scope of her employment by informing O'Connell of a failed transfer application of a member of her department. Also, one would fully expect the Department of Human Resources to support

68

the appropriate and legitimate disciplinary decisions of a Hospital manager, such as Ciaschini did with O'Connell.

Lastly, Solomon alleges that Niles acted outside the scope of her employment by: (1) complaining to the Cancer Center Director about the incident between her and Solomon that occurred on January 19, 2001; (2) making a statement to Human Resources about the same incident; (3) by "blowing Solomon off" while Solomon was attempting to do her job. Def. Id. ¶204. Solomon has no evidence that Niles actually complained to the Director of the Cancer Center. Id. ¶205. Further, even if she did, complaining to either the Cancer Center Director or the Department of Human Resources about Solomon's inappropriate intimidating conduct was not outside the scope of Nile's employment, especially when Solomon's inappropriate conduct was directed at her. Likewise, even if Solomon could present evidence that Niles "blew her off" when Solomon asked for assistance, while Niles may have been negligent in fulfilling her job duties, she certainly did not "maliciously interfere" with Solomon's employment relationship. Solomon's tortious interference claim should be dismissed as to all defendants.

## CONCLUSION

For all of the foregoing reasons, the defendants respectfully request that the Complaint be dismissed in its entirety and judgment enter in their favor.

DEFENDANTS,
HARTFORD HOSPITAL, GLADYS
CIASCHINI, SUSAN O'CONNELL, AND
SANDRA NILES

By _____
Brenda A. Eckert (ct00021)
Beckert@goodwin.com
Gregg P. Goumas (ct19095)
Ggoumas@goodwin.com
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Tel.: (860) 251-5000
Fax: (860) 251-5214

### CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Support of Defendants' Motion for Summary Judgment was mailed, via U.S. mail, postage prepaid, on this 19th day of November, 2004, to:

Rachel M. Baird, Esq.
Law Office of Rachel M. Baird
379 Prospect Street
Torrington CT  06790-5239

_____
Gregg P. Goumas

386195 v.01 S1

71