UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SARAIYA SOLOMON, | : | |
| | : | |
| Plaintiff, | : | CASE NO.: 3:02-cv-1116(EBB) |
| | : | |
| v. | : | |
| | : | |
| HARTFORD HOSPITAL, | : | |
| GLADYS M. CIASCHINI, | : | |
| SUSAN A. O'CONNELL, and | : | |
| SANDRA NILES, | : | |
| | : | |
| Defendants. | : | APRIL 13, 2006 |

**PLAINTIFF'S REPLY BRIEF
TO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO MOTION FOR RELIEF FROM JUDGMENT OR ORDER**

Plaintiff Saraiya Solomon, by and through her undersigned counsel, moves the Court for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and as the Court finds appropriate. (doc. ## 116-118.) The Defendants oppose Plaintiff's motion (doc. # 122.) Plaintiff replies as follows.

**I.   FACTS RELEVANT TO REPLY BRIEF**

The Defendants received notice from Plaintiff of an inconsistency between Hartford Hospital (HH) employee Monica Kowalski's affidavit in support of summary judgment and HH records when Plaintiff filed her opposition to summary judgment on April 5, 2005. (Baird Aff. ¶ 20.) The Defendants filed a reply to Plaintiff's opposition to summary judgment on June 9, 2005. (doc. # 98.) Plaintiff filed a surreply on July 15, 2005. (doc. # 108.) The Court issued a ruling on September 30, 2005. (doc. # 69.)

Although Defendants have not submitted an affidavit with their opposition to Plaintiff's instant motion for relief, Defendants have represented to the Court:

**ORAL ARGUMENT REQUESTED**

- "As a result of the Court's ruling, Defendants realized that they needed to prepare for trial on the issue of whether Plaintiff had been denied the AAI position in the Hemodialysis Unit because of her race." (Defs.' Mem. of Law in Opp'n to Mot. for Relief ("Defs.' Mem.") at 2.)

- "Indeed, the Court had already ruled that the personnel file documents produced during discovery were insufficient to substantiate Ms. Kowalski's sworn statement that Ms. DeGourville had filled the position, and Ms. DeGourville, a former employee, remained unavailable to provide a declaration." (Defs.' Mem at 2.)

- "Just prior to the November 21, 2005 settlement conference with Magistrate Judge Margolis, Defendants located additional documentary evidence through its trial preparation substantiating that Ms. DeGourville had assumed the AAI position in the Hemodialysis Unit at issue." (Defs. Mem at 2-3.)

- "In preparation for the possible trial, Defendants made a final effort to locate any documentation generated by the internal work of the Hemodyalysis Unit that could substantiate that Ms. DeGourville had actually assumed the position at issue. (Defs.' Mem. at 7.)

- "[A]fter the Court's September 29, 2005 ruling, the Defendant Hospital finally succeeded in locating Ms. DeGourville, who confirmed that she had worked as an AAI in the Hemodialysis Unit prior to transferring to another department." (Defs.' Mem. at 7.)

- "… Defendants had been unable to unearth any other personnel file records of Lovey [sic] DeGourville, who was no longer employed in the Hospital, to establish that Ms. DeGourville had, in fact, filled that position." (Defs.' Mem at 7.)

- "As a result of these efforts, Defendant Hospital reviewed the internal work records for the Hemodialysis Unit, and finally located several documents that demonstrate that Ms. DeGourville assumed the AAI position …" (Defs. Mem. at 7.)

The Defendants' representations of these efforts pertaining to the claims surviving summary judgment do not include dates although it is mentioned in their memorandum that the efforts increased following summary judgment.[1] The only information provided by the

---

[1] For example, HH "finally" located Ms. DeGourville after September 29, 2005, but it is not clear when or why she could not be found before that time. The Defendants have not supplemented their discovery to provide Plaintiff with Ms. DeGourville's address and contact information even though this request was served on May 28, 2003, with Plaintiff's first set of interrogatories.

2

Defendants is that they did have the supplemental discovery documents by November 18, 2005, because they were provided to the Court, not the Plaintiff, in a confidential, *ex parte* letter for the Settlement Conference held on November 21, 2005.[2]  (Defs.' Mem at 3.)

A memorandum of the settlement conference issued indicating that Defendants would disclose the documents to Plaintiff that were already in the possession of the Court by December 2, 2005, and any depositions concerning those documents would be complete by December 30, 2005.  (doc. # 115.)

## II.     LEGAL BASIS FOR RELIEF

A federal court possesses the inherent power to vacate its own judgment upon proof that a fraud has been perpetrated upon the Court.  Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

> This 'historic power of equity to set aside fraudulently begotten judgments,' is necessary to the integrity of the courts, for 'tampering with the administration of justice in [this] manner ⋯ involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public.'

Id (internal citations omitted).  "The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question."  Universal Oil Products Co. v. Root Refining Co., 328 U.S. 346, 580 (1975) (citing Hazel Atlas Co. v. Hartford Empire Co., 322 U.S. 238 (1944).

> The power to unearth such a fraud is the power to unearth it effectively. Accordingly, a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation.

---

[2] See Affidavit of Rachel M. Baird (doc. # 118 at ¶ 30): "I was speechless when this information was presented to me and of the four individuals present at the time I believe I was the only one not prepared for Attorney Eckert's announcement."

3

Id. In her motion for relief from the Court's partial summary judgment entered on September 30, 2005, Plaintiff asserted to the Court that the Defendants engaged in fraud, misconduct, and misrepresentation upon Plaintiff in the discovery process and upon the Court during the Court's consideration of Defendants' Motion for Summary Judgment. Plaintiff's counsel filed an affidavit in support of the motion for relief. (doc. # 118.)

Motions filed under Rule 60(b) of the Federal Rules of Civil Procedure for relief from a district court's judgment are committed to the sound discretion of the district court. See Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).

### III.  ARGUMENT

####    A.    Disclosure

Rule 26(e) of the Federal Rules of Civil Procedure states:

> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Plaintiff does not assume in her motion for relief that "*any* production of documents after the initial discovery deadline always constitutes evidence of fraud or misconduct." (Defs.' Mem at 21.) Plaintiff understands that Defendants are required to produce "newly discovered information."[3] (Defs.' Mem. at 21.) Plaintiff does argue that the Defendants' application of a more stringent standard in searching for documents during the trial preparation phase rather then

---

[3] Although Defendants refer to the supplemental discovery as "newly discovered information," Plaintiff does not concede that the circumstances of the discovery in this case would meet the second and third prongs in the definition of "newly discovered information under Rule 60(b)(2). See U.S. v. International Broth. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001) ( "[T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.")

4

the discovery phase constitutes fraud, misrepresentation, and misconduct by the Defendants that prejudiced Plaintiff in her opposition to summary judgment.[4]

The Defendants' explanation for finding additional documents and witnesses through trial preparation efforts assumes that the duty to exercise diligence in responding to discovery requests is less than the diligence required for trial preparation. The Defendants admit by their statements that they found additional information and supplemented their discovery responses through their trial preparation efforts not through any effort to be as thorough as possible in responding to discovery. Plaintiff is injured by the Defendants differentiation between the efforts required of them in responding to discovery and the efforts required in preparation of trial.[5] If Defendants had made the same efforts to find documents and witnesses relevant to the claims that did not survive summary judgment as they did regarding the claim that did survive, then it is as reasonable to believe that the Plaintiff would have at least the same degree of support for seeking relief pursuant to Rule 60(b) as Defendants implicitly claim they have in filing a second motion for summary judgment. The Defendants' ability to search for documents at Hartford Hospital and Plaintiff's ability to do the same concerning her non-surviving claims is not equal and there is clear and convincing evidence, based on the Defendants' representations,

---

[4] The details of the Defendants' search efforts for documents and evidence regarding the surviving claims from summary judgment do not include dates, although according to the Defendants it took a period of time between April 5, 2005, and November 18, 2005, to locate Lovie DeGourville and various documents, some of which Defendants incorrectly assert were not within the scope of Plaintiff's discovery requests. See Defs.' Mem. at 8 n. 2 ("This document was not produced because it did not relate to any position for which Plaintiff applied, and therefore was not relevant to the issues in this case.") However, the document referenced is an application for a promotion or transfer by Lovie DeGourville and Plaintiff served a request for Ms. DeGourville's personnel record on September 24, 2003, at paragraph 127.

[5] The Defendants argue that it is not reasonable to believe that they withheld information they now claim is helpful to their defense. (Defs. Mem. at 15.) On the other hand, the Defendants assert in their memorandum that Plaintiff's claims are meritless. It is reasonable then that the Defendants underestimated Plaintiff's opposition to summary judgment and failed to make the additional efforts to find documents that they found after learning that the summary judgment motion was not granted on all counts. If Defendants had not underestimated the opposition to their motion for summary judgment then after receiving Plaintiff's opposition memorandum, they would have felt compelled to demonstrate that the Defendants, through Ms. Kowalski's affidavit, had not submitted material misrepresentations under oath to the Court.

5

that their efforts to find documents to support their own trial preparation efforts was more diligent than their efforts to find documents in the discovery phase.

      B.      <u>Supplemental Discovery</u>

Plaintiff served approximately one-hundred fifty five (155) production requests and two-hundred fifty (250) requests for admission on Defendants in the course of discovery. (Baird Aff. ¶¶ 2-5.) At some point prior to the Settlement Conference held on November 21, 2005, the Defendants had supplemental discovery in their possession which they did not provide to Plaintiff. The documents were disclosed to Magistrate Judge Margolis. The Defendants still did not release the documents to Plaintiff until December 2, 2005, even though they had the documents. The Defendants, despite indicating in their opposition brief that they have located Ms. DeGourville and represent that she has relevant information, have not provided the Plaintiff Ms. DeGourville's name, address, and other identifying information as requested by the Plaintiff in her request for interrogatories dated May 8, 2003,[6] and required under Rule 26(e). Plaintiff has complied with its discovery obligations by serving the requests and seeking the Court's intervention when necessary to receive responses. Presently, Defendants accuse Plaintiff of "chos[ing] not to make any inquiry into the *factual or legal basis* for her allegations of fraud and misconduct during the four-week period for supplemental discovery allowed by this Court." (Defs. Mem. at 21.)

First, the Court limited the four-week discovery period to depositions concerning the documents that were provided to Magistrate Judge Margolis on or about November 21, 2005, and then provided to the Plaintiff on December 2, 2005. The Plaintiff concedes that the Defendants made trial preparation efforts to find documents related to the surviving claim. The

---

[6] Interrogatory 1 requests: "Identify the name, address, and telephone number of each person likely to have discoverable information relevant to any of the allegations in Plaintiff's Complaint or Amended Complaint."

issue raised by the Plaintiff's motion for relief pursuant to Rule 60(b) is the inherent unfairness of the Defendants' unilateral decision to place more emphasis on supplementing discovery after a summary judgment and only on those claims that survived.  The Defendants admit in their memorandum that it was trial preparation that caused them to supplement discovery.  The problem is that unless the Defendants were as diligent following summary judgment in supplementing discovery pertaining to the non-surviving claims as the surviving claims, Plaintiff is denied the same second chance to address the inadequacies found by the Court in Plaintiff's non-surviving claims.[7]

### C. Newly Discovered Evidence

There is clear and convincing evidence that the Defendants did exercise the same due diligence prior to summary judgment as they did following summary judgment.  In the course of discovery Plaintiff requested documents pertaining to complaints of discrimination against Hartford Hospital.  (Pl.'s Mem., Ex. 3 at 3.)   The Defendants identified Linda Huskey, a former student of Defendant Susan O'Connell, as an individual who had filed a complaint of discrimination against Defendant O'Connell.  In seeking records of Ms. Huskey the Defendants objected based on the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g.  According to the direction of Magistrate Judge Garfinkel and FERPA, the Defendants forwarded a notice to Ms. Husky dated August 12, 2004.  (Ex. 1.)  In the notice, it was indicated that FERPA required the Defendants to make reasonable efforts to advise Ms. Husky of the pending disclosure of her educational records to the Plaintiff.  (Ex. 1.)  The Defendants indicated that they were not able to find Ms. Huskey and an Order issued by the Court releasing records to Plaintiff.  (doc. # 65.)

---

[7] The Defendants accuse Plaintiff of attempting to "relitigate" its failed claims.  (Defs. Mem. at 12.)  The Defendants' representation that they intend to file a second motion for summary judgment would appear to constitute "relitigation" as well.  Plaintiff contends that the Defendants' conduct demonstrates that Plaintiff never had a fair opportunity to litigate her claims.  The instant motion is a request to remedy this denial.

There is clear and convincing evidence however that the Defendants could have found Ms. Huskey if they had exercised due diligence but they did not want to find Ms. Huskey. (Ex. 2.)

## IV.    CONCLUSION

The Defendants' selective actions in choosing which areas of discovery it would pursue diligently and when have prejudiced and harmed the Plaintiff and delayed the Court proceedings. In their opposition however, the Defendants attempt to shift the blame to the Plaintiff who has never withheld any information or failed to act diligently in the discovery process. If the Defendants were unable to locate Lovie DeGourville over at least the period between April 5, 2005, and September 30, 2005, and needed to take extraordinary measures to "unearth" documents in Hartford Hospital's possession, then it is unclear what the Plaintiff with her with her comparatively lack of access to HH documents and resources was to accomplish in fouyr weeks between December 2, 2005, and December 30, 2005. The discovery period was imposed to conduct depsotions concerning the documents. Plaintiff has the documents. The Plaintiff does not need to conduct a deposition to learn that the Defendants really searched for the documents when the summary judgment was not granted in its entirety as they anticipated. The Plaintiff does need the authority of the Court to fashion a remedy to ensure that the same efforts that the Defendants placed in finding the supplemental documents pertaining to the surviving claims will now be placed in searching for the discovery documents pertaining to Plaintiff's non-surviving claims.

9

                                    PLAINTIFF
                                    SARAIYA SOLOMON

BY: _____
       Rachel M. Baird
       Law Office of Rachel M. Baird
       379 Prospect Street
       Torrington CT 06790-5239
       Tel: (860) 626-9991
       Fax: (860) 626-9992

       *Attorney for Plaintiff*

## CERTIFICATION

I HEREBY CERTIFY THAT the foregoing <u>Plaintiff's Reply Brief</u> was mailed, first-class, postage-paid on April 13, 2006, to the following counsel of record:

Benjamin M. Wattenmaker
Shipman & Goodwin LLP
1 Constitution Plz
Hartford CT 06103-1919

                                    _____
                                    Rachel M. Baird